1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Streeter,<br><br>    Plaintiff,<br><br>v.<br><br>Carlos Dominguez, et al.,<br><br>    Defendants. | CV 11-1616-PHX-PGR<br><br>**ORDER** |

Before the Court is Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1), (5), and (6). (Doc. 8.) Plaintiff filed a response opposing the motion. (Doc. 14.) For the reasons set forth below, the motion is granted.

**I.     BACKGROUND**

Plaintiff filed a Complaint alleging that he is entitled to damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violations of his constitutional rights. (Doc. 1.) The following facts are taken from the Complaint.

Plaintiff is employed by the United States Border Patrol ("USBP") as a Border Patrol agent assigned to the Yuma Border Patrol Station. Defendants Carlos Dominguez and John Fountain are also employed by the USBP and assigned to the Yuma Station, Dominguez as a Field Operations Supervisor, Fountain as a Special Operations Supervisor.

On November 1, 2010, Plaintiff arrived at work and parked his personally-owned pickup truck in the east parking lot between the Yuma Station and the USBP Yuma Sector Headquarters. When Plaintiff parked his vehicle, the tailgate was in the upright, closed position, and the duffel bag he had placed in the bed of the truck was zipped shut.

At approximately 2:45 p.m., Plaintiff and a colleague were walking towards their vehicles when they observed Defendants Fountain and Dominguez standing behind Plaintiff's truck. When Fountain and Dominguez noticed Plaintiff and the other agent approaching, they closed the tailgate of Plaintiff's truck and proceeded away from the vehicle. When Plaintiff arrived at his vehicle, he lowered the tailgate and inspected his lunch box and duffel bag. The duffel bag was not in the same position he had left it in but nothing appeared to be missing. Two days later, Plaintiff discovered a handwritten inside a closed DVD case in his duffel bag. The note read "Do not watch movie on duty! Honor First." Plaintiff alleges that the warrantless search of his duffel bag violated his Fourth Amendment rights.

On December 31, 2010, Plaintiff attempted to file a complaint with the Yuma Police Department ("YPD") regarding the search. The YPD did not pursue the matter, having been informed by the USBP that the incident would be handled internally. On January 11, 2011, Plaintiff received notice that he was the subject of an investigation by the USBP and was being accused of "[s]landerous conduct about co-workers and failure to follow applicable rules or policies in the performance of official duties." Plaintiff alleges that this investigation was retaliatory and constituted a violation of his First Amendment right to petition the government for a redress of grievances.

## II. DISCUSSION

Defendants contend that the Complaint must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiff's *Bivens* claims are preempted by the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 2302, and therefore this Court does not have

subject matter jurisdiction. The Court agrees.[1]

Federal courts have limited jurisdiction, and a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). Even assuming the truth of the material facts alleged in the Complaint, *see Orsay v. United States Dep't of Justice*, 289 F.3d 1125, 1127 (9th Cir. 2002), Plaintiff has not met that burden.

The CSRA creates a "remedial scheme through which federal employees can challenge their supervisors' prohibited personnel practices." *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008) (quoting *Orsay*, 289 F.3d at 1128). If the challenged conduct "falls within the scope of the CSRA's 'prohibited personnel practices,' then the CSRA's administrative procedures are [the employee's] only remedy." *Orsay*, 289 F.3d at 1128 (quoting 5 U.S.C. § 2302). The CSRA's remedial scheme is both exclusive and preemptive, providing "a single system of procedures and remedies, subject to judicial review." *Mangano*, 529 F.3d at 1246 (citing *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991)); *see United States v. Fausto,* 484 U.S. 439, 455 (1988) ("The CSRA established a comprehensive system for reviewing personnel action taken against federal employees."). According to Ninth Circuit precedent, "the CSRA precludes even those *Bivens* claims for which the act provides no alternative remedy." *Saul v. United States,* 928 F.2d 829, 840 (9th Cir. 1991); *see Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999); *Mangano*, 529 F.3d at 1246; *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999); *see also Bush v.*

---

[1] Because the Court finds that subject matter jurisdiction does not exist, it will not discuss Defendants' arguments regarding failure of service, failure to state a claim, and qualified immunity.

*Lucas*, 462 U.S. 367, 388 (1983). Therefore, if the CSRA applies to Plaintiff's claims, he is precluded from seeking remedies under *Bivens*.

Plaintiff first asserts that the CSRA does not preempt his *Bivens* claims because he did not avail himself of the grievance procedures of his union's collective bargaining agreement. (Doc. 14 at 8.) This argument is unavailing because, as noted, a federal employee's *Bivens* claims are preempted regardless of the availability of remedies under the CSRA.[2] *Saul*, 928 F.2d at 840.

Plaintiff also suggests that the CSRA does not foreclose relief on his *Bivens* claims because Defendants' search of his property was not a "personnel action" as defined by the CSRA. (Doc. 14 at 9.) Again, the Court is unpersuaded.

"'Personnel action' . . . is defined comprehensively to include any appointment, promotion, disciplinary or corrective action, detail, transfer, reassignment, reinstatement, restoration, reemployment, performance evaluation, pay or benefits decision, mandatory psychiatric examination, or any other significant change in duties, responsibilities, or working conditions." *Mangano*, 529 F.3d at 1247 (citing 5 U.S.C. § 2302(a)(2)(A)(I)-(xi)). As the court noted in *Mangano*, "There are limits to what qualifies as a 'personnel action,' but the instances are well outside anything that could reasonably be described as a 'personnel action.'" *Id.* (citing *Orsay*, 289 F.3d at 1129, which held that aiming a loaded weapon does not fit any of the CSRA's definitions of personnel action), and *Brock v. United States*, 64 F.3d 1421, 1424–25 (9th Cir. 1995), which held that the CSRA does not preempt consideration of claims of rape and sexual assault)). "The critical inquiry in deciding whether conduct constitutes a 'personnel action' is the relationship between defendant's actions and plaintiff's employment." *Plasai v. Mineta*, No. 3-03-CV-2996-BD, 3-04-CV-1477-BD, 2005

---

[2] The Court further notes, without relying on the information in making its legal conclusions, *see Keams v. Tempe Technical Institute, Inc.*, 110 F.3d 44, 46 (9th Cir. 1997), that Plaintiff's assertion appears to be incorrect as a factual matter; he did in fact file a grievance. (*See* Doc. 15, Ex. 1.)

- 4 -

WL 1017806, *3 (N.D. Tex. April 26, 2005) (citing *Collins v. Bender*, 195 F.3d at 1079) (finding that the seizure and examination of plaintiff's computers pursuant to an investigation into her alleged misconduct were "clearly related to [plaintiff's] status as an FAA employee" and noting that defendants did not search her home or seize any property belonging to her).

Defendants Dominguez and Fountain, Plaintiff's supervisors, are alleged to have placed a note in a duffel bag located in the bed of Plaintiff's pickup truck which was parked at their workplace. The note related to Plaintiff's job. This scenario comports with the definition of personnel action applied by the court in *Saul*. Saul was a federal employee whose supervisors opened personal mail addressed to him at work. *Saul*, 928 F.2d at 831. The court found that the supervisors' conduct constituted a "personnel action" under the CSRA—specifically a "disciplinary or corrective action," *id.* at 834—and therefore Saul's constitutional tort claims were preempted. *Id.* at 840. The court explained that in enacting the CSRA "Congress did expect 'prohibited personnel practices' to cover supervisors' violations of employees' constitutional and privacy rights." *Id.* at 834. There is no basis for distinguishing the actions taken by Saul's supervisors from those taken by Dominguez and Fountain.[3]

The Ninth Circuit's decision in *Collins v. Bender* is also instructive. Collins was a DEA agent who had been placed on administrative leave. 195 F.3d at 1077. His supervisor ordered two other agents to go to Collins' house and retrieve his personal firearms. *Id.* Collins turned over his guns after the agents handled their weapons in a threatening manner. *Id.* The court held that the warrantless search of Collins' home and the seizure of his weapons

---

[3] In *Stewart v. Evans*, 275 F.3d 1126, 1130 (D.C.Cir. 2002), cited by Plaintiff, the D.C. Circuit Court rejected the Ninth Circuit's holding in *Saul* and ruled that the warrantless search of a federal employee's private papers was not a "personnel action" covered by the CSRA. However, this Court is bound by the Ninth Circuit precedent, *see Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001), so *Saul* is the controlling legal authority on this issue.

were not "personnel actions" under the CSRA because "[a]ny connection between the defendants' search and Collins' employment was, at best, attenuated." *Id.* at 1079. The court emphasized that the search occurred in Collins' home, not the workplace, and that the agents seized his personal property. *Id.*

The relationship between Defendants' actions and Plaintiff's employment is much closer than the connection between Collins' employment and the actions undertaken by the "renegade posse," *id.* at 1080, that went to his home and seized his personal firearms. The alleged search took place at Plaintiff's workplace. No personal property was seized. The note placed in the duffel bag was related to Plaintiff's status as a USBP employee. In sum, the action taken by Defendants, like that of the supervisors who read the employee's mail in *Saul*, constituted a "personnel action" within the meaning of the CSRA.

The same analysis applies with respect to Plaintiff's claim that his First Amendment rights were violated when he was made the subject of a retaliatory internal investigation. In *Bush*, 462 U.S. 367, the Supreme Court refused to recognize a *Bivens* remedy for a violation of First Amendment rights, explaining that the comprehensive remedies provided by the CSRA covered such violations. *See Saul*, 928 F.2d at 836, and *Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir. 1989) (both citing *Schweiker v. Chilicky*, 487 U.S. 412 (1986)).

### III. CONCLUSION

Because the CSRA precludes a *Bivens* remedy for Plaintiff's claims, the Court lacks subject matter jurisdiction over this case.

Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Doc. 8) is granted and the case is dismissed. The Clerk of Court shall enter judgment accordingly.

DATED this 27th day of January, 2012.

Paul G. Rosenblatt
United States District Judge